UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS J. HARRINGTON, RICHARD )
S. NEVILLE, THOMAS FORDHAM, )
FRANCIS J. FERGUSON, JOHN A. )
BIGGINS, MARK J. DURKIN, JOSEPH D. )
FLEMING, III, )
           Plaintiffs, )
 )
vs. )
 )
ALEXIS M. HERMAN, Secretary of Labor, )
U. S. Department of Labor, )
           Defendant. )
_____ )

**00cv11028RGS**

Civil Action No. 00-

## PETITION FOR JUDICIAL REVIEW

Petitioners Thomas Harrington, Richard S. Neville, Thomas Fordham, Francis J.

Ferguson, Jr., John A. Biggins, Mark J. Durkin, and Joseph D. Fleming, III, who are members in

good standing of the New England Regional Council of Carpenters ("Regional Council") and the

United Brotherhood of Carpenters and Joiners, AFL-CIO ("UBCJA"), present this Petition for

Judicial Review of the Secretary of Labor's decision not to take certain legal action.  In support

of the Petition, Petitioners respectfully allege:

### Jurisdiction and Venue

1.      Jurisdiction of this court is based upon the Labor Management Reporting and

Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 104 *et seq.* and the Administrative

Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*

2.      Venue is based on Section 703 of the Administrative Procedures Act.

## Nature of the Proceeding

3.     Petitioners seek review of the Secretary of Labor's refusal to take legal action upon on a complaint filed with the Department of Labor by the Plaintiffs. Plaintiffs' complaint concerned the failure of the New England Regional Council of Carpenters to elect its officers in compliance with the LMRDA.  The statutory provisions of the LMRDA and the APA authorize this Court to review the proceedings of the Secretary of Labor, including a decision not to pursue a complaint filed under the LMRDA.

4.     The Regional Council was created by the UBCJA on July 1, 1996.

5.     The officers of the Regional Council were elected by delegates to the Regional Council and not by the rank-and-file members of the Regional Council.

6.     Section 401(b) of the LMRDA states: "Every local labor organization shall elect its officers not less than once every three years by secret ballots among the members in good standing."

7.     On or about September 21, 1999 Petitioners filed a timely complaint with the Department of Labor alleging that the Regional Council failed to elect officers in compliance with Title IV of the LMRDA.  A true copy of the Complaint is attached hereto as Exhibit A.  The complaint alleged that the Regional Council had assumed functions traditionally performed by the local unions of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO.

8.     If the Regional Council is acting as a local labor organization, its members must directly elect its officers to remain in compliance with Section 401(b) of the LMRDA, 29 U.S.C. § 481(b).

2

9.      A Statement of Reasons for dismissing the Complaint was issued by the Office of Labor-Management Standards on or about April 7, 2000. A true copy of the Statement of Reasons of which Petitioners seek review is attached hereto as Exhibit B.

10.     In its Statement of Reasons, the Department indicated that its investigation disclosed no evidence that would provide a basis for concluding that the Regional Council was a local labor organization. Instead, the Department found that the local unions subordinate to the Regional Council continue to function as separate organizations under the LMRDA.

11.     The Department concluded that the Regional Council could not be a local labor organization and, therefore, there was no violation of the LMRDA because the local unions of the Regional Council were not "… so depleted of power and function that they no longer constitute 'local' labor organizations under the LMRDA."

12.     The Department is relying on an improper construction of the LMRDA, to wit, that the finding of the continued existence of local labor organizations requires the conclusion that any superior entity cannot also be construed to be a local labor organization under the LMRDA.

13.     Petitioners have a substantial interest in the decision of the Secretary of Labor, within the meaning of the APA, and have been adversely affected and aggrieved thereby within the meaning of the Statute.

Claim for Relief

14.     The Secretary of Labor's Statement of Reasons is arbitrary, capricious, unsupported by substantial evidence and contrary to the LMRDA and relevant Department regulations.

3

15.     The Secretary of Labor's reasons for determining there is no violation of the LMRDA with respect to the failure to hold a direct membership election in the Regional Council within three years of its creation is based on a finding that the local labor organizations are "not completely depleted of power and function" and, thereby, constitutes an erroneous construction of the LMRDA.

WHEREFORE, Petitioners request that:

1.     An order be granted for review of the Secretary of Labor's Statement of Reasons;

2.     The Secretary of Labor be ordered to bring a civil action against the Regional Council in District Court pursuant to LMRDA, 29 U.S.C. § 482, requiring the Regional Council to elect its officers no less frequently than every three years by a secret ballot election of its general membership.

3.     Petitioners have such other and further relief as the Court may seem just and proper.

Dated:  May 2( , 2000

Respectfully submitted for
PETITIONERS .
By their Attorney,

Michael A. Feinberg, BBO # 161400
Feinberg, Campbell & Zack, P.C.
177 Milk Street,
Boston, MA  02109
(617) 338-1976

4

## Complaint to the United States Secretary of Labor

### I.    Introduction

The Carpenters for a Democratic Union (hereinafter "CDU"), consisting of thousands of members of the New England Regional Council of Carpenters (hereinafter "NERC"), and the union members signing this Complaint hereby file this formal Complaint, pursuant to 29 U.S.C. §482 and 29 C.F.R. §452.4, concerning the failure of the United Brotherhood of Carpenters and Joiners of America (hereinafter "UBCJA") and NERC to conduct a direct election of the officers of NERC as required by 29 U.S.C. §481(b).

Members of all of the local unions comprising the New England Regional Council of Carpenters previously petitioned the United Brotherhood of Carpenters and Joiners of America to redress this grievance and to have direct elections of their officers. That request, filed on or about May 26, 1999 with General President Douglas McCarron, has not been responded to by the UBCJA. A copy of that letter and petition signed by thousands of union carpenters was forwarded to the Department of Labor at that time.

### II.    Background

NERC was created by the UBCJA on July 1, 1996 (see attached By-Laws). NERC includes all of the local unions affiliated with UBCJA in New England and their 22,000 members. Under the new By-Laws, rank and file members of these locals elected delegates pursuant to a formula based on the size of the membership of each local union. (Section 14 of the By-Laws) Those delegates, numbering approximately 116, then elected all of the officers of NERC. Those officers include the President, Vice-President, Executive Secretary-Treasurer (who is the Chief Executive Officer), five Executive Committee members, Warden, Conductor and three Trustees. The only full time officer is the Executive Secretary-Treasurer. The term of office for all of these officers is four years. (Section 4 of the By-Laws)

The Executive Committee consists of five elected members and the President, Vice-President and Executive Secretary-Treasurer. These eight individuals effectively have supervision of all Council business between the quarterly meetings of the delegates. (Section 10 of the By-Laws)

As indicated above, the Chief Executive Officer is the Executive Secretary-Treasurer. His duties are spelled out in Section 8 of the By-Laws. In essence, the Executive Secretary-Treasurer is solely responsible for the management and supervision of all of the activities, business office(s) and business of NERC. He controls all of the monies for the Council, prepares the quarterly financial reports, furnishes to each local union a correct record of the meetings of the Council, refers all bills to the Trustees for review, and is authorized to spend funds for any of the "purposes and objects of the Council".

The Executive Secretary-Treasurer has the exclusive authority to hire, suspend, promote or terminate all NERC clerical and custodial employees and determines their duties, assignment, compensation, hours of employment and other conditions of employment. Critically, the Executive Secretary-Treasurer also has the authority to appoint, hire, suspend, promote or terminate Council Business Representatives and Organizers, subject to the approval of the

1

Executive Committee of the Council. Currently, all but one person on the Executive Committee is a full time employee of NERC. Therefore, with just one exception, the Executive Committee was hired by and works directly for the Executive Secretary-Treasurer. According to the Bylaws, all of these individuals remain employed so long as the Executive Secretary-Treasurer wants to keep them employed. Since seven of the eight individuals work directly for the Executive Secretary-Treasurer, it is not surprising to learn that not one decision of the Executive Secretary-Treasurer has been rejected by the Executive Committee. Among the actions by the Executive Secretary-Treasurer were approximately ten discharges or forced resignations/retirements of Business Representatives and Organizers.

In addition, as more fully set forth below, the Executive Secretary-Treasurer is the Chairman of all negotiating committees and appoints all persons to negotiating committees. He serves as a Trustee on all of the Trust Funds involved with NERC including, but not limited to, Health and Welfare, Pension, Labor-Management and Joint Apprenticeship and Training Funds.

## III.    **NERC Is A Local Union**

Since the officers, including the chief executive officer of NERC, are not directly elected by the rank and file members of the various local unions, the UBCJA and NERC must prove that NERC is an intermediate body that falls within 29 U.S.C. §481(d) and not 29 U.S.C. §481(b).[1] Intermediate bodies are described in 29 C.F.R. §451.4(f) as those types of organizations such as conferences, general committees, joint or system boards, or joint councils.

While not dispositive of the issue, 29 C.F.R. §451.4(e) describes a "local" as "... any labor organization that has been chartered by an organization [and falls] within ... the categories ... [of a certified employee representative ... under the National Labor Relations Act] or [a labor organization, though not formally certified, which is recognized or acting as the representative of employees] ... as the local or subordinate body through which such employees may enjoy membership or become affiliated with the chartering organization."

Of course, 29 U.S.C. §481(b) requires:

Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing.

As will be shown below, NERC deals directly with employers and their associations on all labor matters.

---

[1] In this regard, it should be noted that 29 C.F.R. §452.12 requires that the Department of Labor not make determinations with respect to elections based upon the "name" or "characterization" of a particular organization. In part, the regulation states:

The characterization of a particular organizational unit as a "local", "intermediate", etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself.

2

a. **Negotiation of Collective Bargaining Agreements**

Significantly, NERC negotiates all of the collective bargaining agreements covering all of the union carpenters in New England. Indeed, Section 18 of the By-Laws of NERC states:

> The Council shall have the **exclusive** power and authority to negotiate, ratify and execute Collective Bargaining Agreements for and on behalf of its affiliated Local Unions, except to the extent that the International Union exercises its jurisdiction or authority.

This point is further strengthened by Section 8(b) in which it is stated, in part:

> The Executive Secretary-Treasurer or designee shall be chairman of all negotiating committees and shall appoint such committees.

The By-Laws leave no doubt as to where the collective bargaining responsibility lies. Since the By-Laws were adopted on July 1, 1996 NERC, through its Executive Secretary-Treasurer, has negotiated several major collective bargaining agreements encompassing thousands of union carpenters including two collective bargaining agreements covering the Commonwealth of Massachusetts and one in the State of Connecticut. In all of those situations, the chairman of the negotiating committee was the Executive Secretary-Treasurer. He appointed all other members of the negotiating committee. The local unions covered by the agreements played no part in the negotiation of any of the collective bargaining agreements. The agreements were eventually ratified and approved by the delegates to NERC.[2] The rank and file members did not approve nor ratify any collective bargaining agreement negotiated by the Executive Secretary-Treasurer. All contracts are now negotiated in the name of the New England Regional Council of Carpenters.

b.    **Handling Of Grievances**

In addition, the Executive Secretary-Treasurer determines whether violations of the collective bargaining agreements occur, whether to submit a grievance and whether to arbitrate any outstanding grievances between NERC and a contractor or contractor associations. The Executive Secretary-Treasurer has ordered the arbitration of several disputes with contractors concerning alleged subcontracting violations and other alleged violations of the collective bargaining agreements. Local unions and their memberships have absolutely no authority or power to submit a grievance, demand arbitration, settle a matter or withdraw an issue from arbitration.

c.    **Trust Funds**

Section 19 of the Bylaws provides that the Council has the power and authority to appoint and remove all of the Trustees for all of the negotiated multi-employer Trust Funds

---

[2] Indeed, in one instance members of Local Union 2168 actually rejected their proposed contract covering floorcoverers in Massachusetts, which, nonetheless, was subsequently approved and implemented by NERC for that local.

3

including, but not limited to, health and welfare funds, pension funds, labor-management cooperation committees, vacation funds, savings and holiday plan funds and apprenticeship funds. The Council also has the right, as more fully set forth in Section 19, to determine all allocations from negotiated wage amounts to be applied to the Trust Funds. The rank and file members and the local unions have no effective role to play with respect to any of these decisions including the decisions as to which individuals will serve as their trustees on the multi-employer Trust Funds.[3] Indeed, the By-Laws require that all existing Trust Agreements and/or Plan documents be amended to reflect the appointment process of trustees as contained in the By-Laws.

### d.    Other Business Of The Council

Section 8(a) of the By-Laws provides that the Executive Secretary-Treasurer acts as the Chief Executive Officer of the Council. As such, he is solely responsible for the management and supervision of all field activities, assignments of all of the Business Representatives and Organizers and for the daily business of the Council. The rank and file members and the officers of the local unions have absolutely no role to play with respect to any of the day-to-day activities of the Council. Recently, the Executive Secretary-Treasurer, without benefit of a vote of the Executive Committee or delegates, decided to eliminate Local 511 and its 200 members by ceding jurisdiction over asbestos removal work to another union. Finally, all stewards are now trained by NERC on a Council-wide basis regardless of the local union to which they belong.

### e.    Financial Matters

Section 8(a) of the By-Laws also dictates that the Executive Secretary-Treasurer handles all of the funds and is solely responsible for deposits made by the Council. He prepares quarterly financial reports of the Council and handles all bills for the Council. The By-Laws grant to the Executive Secretary-Treasurer the exclusive authority to spend funds "for any or all of the purposes and objects of the Council." While the local unions retain the right, by vote of their memberships, to establish monthly dues (Section 13 of the By-Laws), they "… must be approved by the Council." The lack of financial independence of the local unions is clearly evident when the following is considered: all working dues are established by the Council without benefit of a vote from the members. These funds, constituting millions of dollars per year, are sent directly to NERC. Only 8% of these funds, as voted by the Executive Committee, are remitted to the local unions. The combination of these modest amounts with the small amounts of monthly dues kept by the locals barely allow the locals to pay their rent and clerical employees. Moreover, any local union expenditure in excess of $300.00 must be approved by NERC, annual local union budgets must be approved by NERC and all assets of each local union must be inventoried and submitted to NERC. The Council may also impose a per capita tax on each local or special assessments (Section 12 of the Bylaws).

Clearly, the intent and effect of the By-Laws is to financially emasculate the local unions. Obviously, without financial resources the local unions are further weakened especially since the UBCJA's per capita taxes are paid out of local unions' funds.

---

3 Recently, the membership was "surveyed" as to how they wanted a future wage increase allocated. However, the By-Laws remain unchanged and the survey results will be "advisory" as was noted on the survey form.

4

**f.      Job Referral System**

The Executive Committee of the Council, pursuant to Section 33 of the By-Laws, is required to adopt and enforce a centralized and uniform job referral system. The Council has already announced that there will be an "800" telephone number, manned at the Regional Council, which members must call in order to be "referred out". This system will be implemented within thirty (30) days and will control all job referrals throughout New England. Thus, another critical function of the local unions has been or will shortly be usurped by NERC.

**g.      Role Of The Local Unions**

Perhaps no other effect of the NERC By-Laws is more dramatic than the total denigration and destruction of the local unions. As Section 27 of the By-Laws states:

> All Representatives and Organizers working in the jurisdiction
> of the Council shall be employed by and placed under the supervision
> and direction of the Executive Secretary-Treasurer of the Council.

> -and-

> The local unions shall <u>not</u> be allowed to employ anyone other
> than clerical employees. (Emphasis added)

The net effect of Section 27 is to render the local unions into powerless and functionless administrative units. Local unions may not pay any full-time officers to represent the locals or its members' interests, and can't even employ an attorney to handle their affairs. Thus, the locals exist in name only and serve no useful or collective bargaining purpose for their members.

**h.      Internal Union Discipline**

Unlike the system in effect prior to July 1996, the Trial Committee established to determine discipline against members is selected by the Executive Secretary-Treasurer of NERC. Therefore, NERC determines the guilt, liability and penalty for members of each local union. (Section 34 of the By-Laws)

**i.      Member Identity**

After July 1996 each member's working card emphasizes that the member belongs to NERC. His or her local union affiliation is made incidental. (Section 26 of the By-Laws)

**IV.      <u>Legal Argument</u>**

In every meaningful way and with respect to every significant issue, NERC clearly acts as local union in representing employees with employers engaged in an industry affecting commerce. NERC falls squarely within 29 C.F.R. §451.3 because it functions as a labor organization and, as importantly, it does not meet the letter or spirit of 29 C.F.R. §451.4(f) as an intermediate body.

5

Since the LMRDA defines neither "local union" nor "intermediate union" these terms must be construed in light of their ordinary meaning, congressional purposes and deference to the Department of Labor's construction of the Act. Ellis v. CSEA Local 1000, 913 F.Supp. 684 (1996 DC Northern New York).

As shown above, the actual functions and practices of NERC underscores the conclusion that in all instances NERC acts in the traditional role of a "local union"; that is it serves as the "front line" for the members in dealing with employers. This is particularly true when the diminished, if not extinguished, functions of the local unions in NERC are taken into consideration.

The seminal case with respect to this issue is Donovan v. National Transient Division, International Brotherhood of Boilermakers, et al., 736 F.2d 618 (10th Cir. 1984). In this case, the Secretary of Labor brought an action to compel a division of the international labor organization to comply with the Labor-Management Reporting and Disclosure Act of 1959 and conduct a direct election of division officers at least once every three years.

The Tenth Circuit agreed with the Secretary of Labor that the division, one of five divisions of the International, which operated in 41 states and consisted of approximately 8000 members who traveled throughout the United States erecting steel tanks and related structures was, nonetheless, a "local union" within the meaning of the Act. The Tenth Circuit Court of Appeals found support for its decision in Section 402(i) which provided, in relevant part, that a labor organization meant a labor organization engaged in an industry affecting commerce and including any organization of any kind, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment. The defendants argued that many of the division members could not attend meetings regularly or have any substantial direct contact with the organization because of the transient nature of their work. Thus, the defendants intended that the LMRDA did not apply because its members could not "participate" in the organization. Disregarding this argument, the Tenth Circuit Court of Appeals concluded that if the organization represented its members regarding grievances, labor disputes or terms and conditions of employment, the organization was subject to the Act regardless of its formal attributes. 736 F.2d at 621.

The Tenth Circuit Court of Appeals found further support for its conclusion that the division was a "local union" because the division officials negotiated collective bargaining agreements with employers for the benefit of its members, handled grievances, distributed publications, held meetings and collected dues from its membership. The Court concluded that since the division provided day-to-day services to the membership, such as "policing collective bargaining agreements, disposing of grievances, collecting membership dues and disciplining dissident members" it constituted a local union within the meaning of the Act. 736 F.2d at 622.

Finally, pointing to the congressional history of the LMRDA, the Tenth Circuit Court of Appeals concluded that it was necessary to have a direct election of the officers of the division in order "... to ensure that union officers would be responsive to the needs and desires of union members." 736 F.2d at 622; see, also, S.Rep. No. 187, 86 Cong., 1st Sess. 19-20, reprinted in 1959 U.S. Code Cong. & Ad. News 2318, 2336. Significantly, the Tenth Circuit Court of Appeals concluded that it made little sense to focus exclusively on the geographical proximity of

6

the organization's membership in determining whether a labor organization is a local within the meaning of Section 481(b). "Rather, congressional intent indicates that the focus should be on the relationship between the organization and its members." 736 F.2d at 623.

As in the Boilermakers case, NERC performs all of the functions of a local union. NERC officials negotiate the terms of collective bargaining agreements, ensure that those agreements are enforced, handle grievances, collect dues from members, discipline members, maintain out-of-work lists, refer members for employment, appoint trustees to their fringe benefit funds, make all of the critical decisions affecting members and provide a number of other services directly for its members. NERC is functionally and structurally a local labor organization. In addition, it has effectively displaced the traditional local unions for the purposes of Section 481(b) of the LMRDA.

## V.    Conclusion

For all of these reasons, it is respectfully requested that the Secretary of Labor concludes that the New England Regional Council of Carpenters is a local labor organization within the meaning of the Labor-Management Reporting and Disclosure Act. Pursuant to the statute and the regulations of the Department of Labor, it is further requested that direct elections of its officers be held no less frequently than every three years. Since more than three years has now passed from the creation of the New England Regional Council of Carpenters and no direct election by members of officers has been held a violation of the Act exists.

Therefore, for all of the reasons outlined above, it is respectfully submitted that the Department of Labor has the jurisdiction, the authority and responsibility to investigate this matter and to order the United Brotherhood of Carpenters and Joiners of American and the New England Regional Council of Carpenters to have direct elections of the officers by members of the New England Regional Council of Carpenters.

This Complaint is submitted by the below named union carpenters on behalf of the thousands of union carpenters who have signed petitions demanding direction elections of NERC officers.

Name: Richard L. Neville
Local Union No. 33

Name: John A Bigfin
Local Union No. 40

Name: _____
Local Union No. 33

Name: Joseph D. Fleming
Local Union No. 218

Name: _____
Local Union No. 2168

Name: Mark J Durkin
Local Union No. 67

Name: _____
Thomas J. Harrington
Local Union No. 33

**U.S. Department of Labor**

Employment Standards Administration
Office of Labor-Management Standards
Washington, D.C. 20210



APR    7  2000

Mr. Thomas J. Harrington
20 Rose Marie Lane
Walpole, MA 02081

Dear Mr. Harrington:

This is to advise you of the disposition of your complaint filed with the Secretary of Labor alleging that a violation of Section 401 of the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), occurred in that the New England Regional Council of Carpenters is not conducting its officer elections in accordance with the standards prescribed for local labor organizations.

Pursuant to Sections 304 and 601 of the LMRDA, an investigation was conducted by the Office of Labor-Management Standards. After carefully reviewing the investigative findings, and after consulting with the Solicitor of Labor, we have determined that legal action is not warranted in this case. We are, therefore, closing our file as of this date.

The basis for this decision is set forth in the enclosed Statement of Reasons.

Sincerely,

Lary F. Yud
Chief, Division of Enforcement

Enclosure

cc:    Mr. Michael Feinberg
       Feinberg, Charnas, Campbell and Zack, P.C.
       Attorneys at Law
       177 Milk Street
       Boston, MA 02114

*Working to Improve the Lives of America's Workers*

Statement of Reasons for Dismissing the Complaint
of Thomas Harrington Regarding the Alleged Failure of the
New England Regional Council of Carpenters, United
Brotherhood of Carpenters and Joiners of America, AFL-CIO, to Elect Officers
in Compliance with the Labor-Management Reporting and Disclosure Act.

The complainant, Thomas Harrington, a member in good standing of New England Regional Council of Carpenters [Regional Council], United Brotherhood of Carpenters and Joiners, AFL-CIO, filed a timely complaint alleging that the Regional Council fails to elect its officers in compliance with Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 482, *et seq.* (the "Act"). For the following reasons, the complaint is dismissed.

The complainant alleges that since the Regional Council assumed functions traditionally performed by the locals of the Carpenters, the Regional Council is now acting as a "local" labor organization and must therefore directly elect its officers to remain in compliance with section 401(b) of the Act, 29 U.S.C. § 481(b). Section 401(b) of the Act states, "Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing." The Regional Council considers itself an intermediate body, and elects its officers via delegates elected by the members of locals pursuant to section 401(d) of the Act, 29 U.S.C. § 481(d). Section 401(d) states that, "Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot."

The Regional Council was created by the United Brotherhood of Carpenters and Joiners [International] on July 1, 1996. The bylaws of the Regional Council do appear to invest it with some of the powers and functions the locals traditionally possessed. However, the Department is unable to conclude that for this reason the Regional Council is no longer an intermediate body entitled to elect its officers in accordance with either of the two choices prescribed by Congress for intermediate bodies in section 401(d) of the Act.

Congress' purpose in ordering unions to conduct free and fair periodic elections was "to insure that the officials who wield [power] are responsive to the desires of the men and women whom they represent". S. Rep. No. 187, 86th Cong., 1st Sess. 19-20. In section 401(d) of the Act, Congress indicated that with respect to intermediate bodies the above purpose could be achieved either directly by a secret ballot vote among all of the members of the intermediate body or indirectly by delegates who themselves were elected directly by secret ballot vote among all the members they represent. Furthermore, that same report indicates that Congress recognized that intermediate bodies had varying degrees of governing power. It states, "The bill recognizes that in

some unions intermediate bodies exercise *responsible governing power* and specifies that the members of such bodies as systems boards in the railroad industry be elected by secret ballot of the members of the union *or union officers elected by the members by a secret ballot.*" Id. (emphasis added). Thus, Congress understood that intermediate bodies could exercise "governing power" and still be permitted to elect officers via delegate as long as these delegates were selected by secret ballot. There is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body.

Further, the Department's investigation disclosed no evidence that would provide a basis for concluding that the Regional Council is now a "local" labor organization. The available evidence indicates that the locals that comprise the Regional Council have not been dissolved or absorbed by the Regional Council so as to be mere administrative arms of the Council, but rather appear to continue to function as separate labor organizations under the Act. From the evidence obtained from the Department's investigation, the locals subordinate to the Regional Council satisfy the definition of "local" in the ordinary sense. All of the locals of the Carpenter's New England region are clearly subordinate to the Regional Council, which in turn is subordinate to the International. These locals are independently chartered, have identifiable memberships, elect their own officers, and have their own bylaws. The locals are parties to collective bargaining agreements, and although the Regional Council negotiates these agreements, the locals have the authority to ratify them. The New England Carpenter locals hold meetings periodically where the membership is informed of union activities and business. Each local has its own budget and manages its own bank accounts. Collection of membership dues is performed at the local level. First level grievances are administered by stewards at the local level. Based upon these facts, we are unable to conclude that the locals of the New England Regional Council are so depleted of power and function that they no longer constitute "local" labor organizations under the LMRDA. There is no violation.

It is concluded from the analysis set forth above that the investigation failed to disclose any violation of the Act upon which the Secretary of Labor may bring an action under Section 402 of the Act, 29 U.S.C. § 482, to set aside the election. Accordingly, we are closing our file on this matter.

2