UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-CV-11028-RGS

THOMAS HARRINGTON et al.

v.

ALEXIS M. HERMAN, Secretary of Labor, and
U.S. DEPARTMENT OF LABOR

<u>MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS</u>

April 10, 2001

STEARNS, D.J.

On May 25, 2000, Thomas Harrington, Richard S. Neville, Thomas Fordham, Francis J. Ferguson, John A. Biggins, Mark J. Durkin, and Joseph D. Flemming, III, members of the United Brotherhood of Carpenters and Joiners, AFL-CIO (UBCJA), and the New England Regional Council of Carpenters (Regional Council), filed this petition against Alexis M. Herman, in her capacity as Secretary of Labor,[1] and the U.S. Department of Labor, seeking judicial review of the Secretary's decision declining to institute legal action against the Regional Council. The petitioners maintain that because the Regional Council is a de facto "local" union, the indirect election of its officers violates Title IV of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481-483.

On September 21, 1999, petitioners requested that the Secretary seek an order mandating the direct election of Regional Council officers by the secret ballot of the general

---

[1]No motion has been made to substitute Herman's successor as Secretary.



membership.[2] The Regional Council was created in 1996 as the central governing body for UBCJA local unions in New England. Under § 14 of the Regional Council's Bylaws, local unions within its jurisdiction elect one delegate to the Council for every 200 enrolled members. The delegates then elect the officers of the Regional Council who serve four year terms.[3]

The petitioners argued that while the LMRDA, 29 U.S.C. § 481(d), authorizes an "intermediate" union organization to elect its officers indirectly, the Regional Council does not qualify as an intermediate body because it has usurped virtually all of the powers of its local unions.[4] Petitioners point to the fact that the Regional Council negotiates all collective bargaining agreements, employs all union business representatives and organizers,[5] sets hiring procedures, approves local stewards, handles union grievances and arbitrations, collects the lion's share of union dues, and manages the union trust funds. Petitioners maintain that the aggrandizement of the Regional Council's powers at the expense of its local unions has transformed the latter into empty shell appendages. Consequently, the

---

[2]Congress has granted the Secretary the exclusive right to seek judicial enforcement of the provisions of the LMRDA. Trbovich v. United Mine Workers, 404 U.S. 528, 536 (1972). Union members who desire to challenge union election procedures may do so only through the Secretary.

[3]The officers are the President of the Council, the Executive Secretary-Treasurer, five Executive Committee members, the Warden, Conductor, and three Trustees.

[4]Section 481(d) states that "[o]fficers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot."

[5]The local unions employ only clerical staff.

Regional Council, in petitioners' view, should be treated as a local union governed by § 481(b), which requires "[e]very local labor organization [to] elect its officers not less often than once every three years by secret ballot among the members in good standing."[6]

After an investigation, the Secretary, on April 7, 2000, issued a Statement of Reasons rejecting the petitioners' request.   Petitioners then filed this case pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 704, seeking review of the Secretary's decision.[7]  As the Supreme Court made clear in Dunlop v. Bachowski, 421 U.S. 560, 571-573 (1975),[8] a district court's power in this regard is very limited.

> [S]ince the [LMRDA] relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit; . . . therefore, to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his determination. . . . The necessity that the reviewing court refrain from substitution of its judgment for that of the Secretary thus helps define the permissible scope of review. Except in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives not to permit individuals to block or delay resolution of post-election disputes, but rather 'to settle as quickly as practicable the cloud on the incumbents' titles to office';

---

[6]The LMRDA does not define the terms "local labor organization" and "intermediate bodies."

[7]On October 27, 2000, the defendants filed a motion to dismiss the petition.  On March 29, 2001, the court heard oral argument on the motion.

[8]Overruled in part by Local No. 82, Furniture & Piano Moving v. Crowley, 467 U.S. 526, 549-550 (1984).

and 'to protect unions from frivolous litigation and unnecessary interference with their elections.' 'If . . . the Court concludes . . . there is a rational and defensible basis (stated in the reasons statement) for (the Secretary's) determination, then that should be an end of this matter, for it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be.'

Id.

The Secretary's Statement of Reasons is as follows.

The complainant, Thomas Harrington, a member in good standing of New England Regional Council of Carpenters [Regional Council], United Brotherhood of Carpenters and Joiners, AFL-CIO, filed a timely complaint alleging that the Regional Council fails to elect its officers in compliance with Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 482, et seq. (the "Act"). For the following reasons, the complaint is dismissed.

The complainant alleges that since the Regional Council assumed functions traditionally performed by the locals of the Carpenters, The Regional Council is now acting as a "local" labor organization and must therefore directly elect its officers to remain in compliance with section 401(b) of the Act, 29 U.S. C. § 481(b). Section 401(b) of the Act states, "Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing." The Regional Council considers itself an intermediate body, and elects its officers via delegates elected by the members of locals pursuant to section 401(d) of the Act, 29 U.S.C. § 481(d). Section 401(d) states that, "Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot."

The Regional Council was created by the United Brotherhood of Carpenters and Joiners [International] on July 1, 1996. The bylaws of the Regional Council do appear to invest it with some of the powers and functions the locals traditionally possessed. However, the Department is unable to conclude that for this reason the Regional Council is no longer an intermediate body entitled to elect its officers in accordance with either of the two choices prescribed by Congress for intermediate bodies in section 401(d) of the Act.

Congress' purpose in ordering unions to conduct free and fair periodic elections was "to insure that the officials who wield [power] are responsive to the desires of the men and women whom they represent". S.Rep. No. 187,

4

86th Cong., 1st Sess. 19-20. In section 401(d) of the Act, Congress indicated that with respect to intermediate bodies the above purpose could be achieved either directly by a secret ballot vote among all of the members of the intermediate body or indirectly by delegates who themselves were elected directly by secret ballot vote among all the members they represent. Furthermore, that same report indicates that Congress recognized that intermediate bodies had varying degrees of governing power. It states, "The bill recognizes that in some unions intermediate bodies exercise *responsible governing power* and specifies that the members of such bodies as systems boards in the railroad industry be elected by secret ballot of the members of the union *or union officers elected by the members* by a secret ballot." Id. (emphasis added). Thus, Congress understood that intermediate bodies could exercise "governing power" and still be permitted to elect officers via delegate as long as these delegates were selected by secret ballot. There is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body.

Further, the Department's investigation disclosed no evidence that would provide a basis for concluding that the Regional Council is now a "local" labor organization. The available evidence indicates that the locals that comprise the Regional Council have not been dissolved or absorbed by the Regional Council so as to be mere administrative arms of the Council, but rather appear to continue to function as separate labor organizations under the Act. From the evidence obtained from the Department's investigation, the locals subordinate to the Regional Council satisfy the definition of "local" in the ordinary sense. All of the locals of the Carpenter's New England region are clearly subordinate to the Regional Council, which in turn is subordinate to the International. These locals are independently chartered, have identifiable memberships, elect their own officers, and have their own bylaws. The locals are parties to collective bargaining agreements, and although the Regional Council negotiates these agreements, the locals have the authority to ratify them. The New England Carpenter locals hold meetings periodically where the membership is informed of union activities and business. Each local has its own budget and manages its own bank accounts. Collection of membership dues is performed at the local level. First level grievances are administered by stewards at the local level. Based upon these facts, we are unable to conclude that the locals of the New England Regional Council are so depleted of power and function that they no longer constitute "local" labor organizations under the LMRDA. There is no violation.

It is concluded from the analysis set forth above that the investigation failed to disclose any violation of the Act upon which the Secretary of Labor may bring an action under Section 402 of the Act, 29 U.S.C. § 482, to set aside the election. Accordingly, we are closing our file on this matter.

Petitioners argue that the Secretary's decision is "arbitrary and capricious" because her analysis focuses simply on the Regional Council's structure while ignoring its functions. Petitioners maintain that the critical inquiry is whether the Regional Council operates for all practical purposes as a local union, a question that cannot be answered by the Secretary's simplistic comparison of the structure of the UBCJA with that of the traditional pyramidal union hierarchy. Petitioners argue that she compounded her error by failing to distinguish two prior cases, Donovan v. National Transient Division, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forger and Helpers, 736 F.2d 618 (10th Cir. 1984), and Schultz v. Employees' Federation of the Humble Oil Refining Co., 1970 US Dist LEXIS 12288 (S.D. Tex. 1970), in which self-defined intermediate organizations were held to be de facto local unions.

Both cases, however, are distinguishable. In Boilermakers, the Tenth Circuit held that the National Transient Division of the International Brotherhood of Boilermakers (NTD) was not an intermediate or national organization because it had no subordinate unions. The members belonged directly to the Division and to no other grassroots organization.[9] Similarly, in Humble Oil, the district court held that the Employees' Federation was a local union and not an intermediate organization, because its subordinate subdivisions performed

---

[9]Petitioners argue that Boilermakers is particularly analogous because the Tenth Circuit looked to the functions that the Transient Division performed and found them to be similar to those of a local union. Petitioners argue that the Secretary here focused solely on the subordinate status of the local unions to the Regional Council and the Regional Council's symmetrical subordination to the authority of the International Union. This, however, unfairly characterizes the Secretary's decision. Unlike the situation in Boilermakers, the Secretary here found that the local unions were not mere titular appendages of the Regional Council but performed at least some of the traditional functions of local unions, including regular members' meetings, dues collection, administration of first level grievance procedures, and ratification of collective bargaining agreements.

6

no functions at all.  In contrast, the Secretary in this case specifically found that many of the functions absent in <u>Humble Oil</u> were performed by the local UBCJA unions, including the ratification of collective bargaining agreements.[10]  Petitioners urge the court to overturn the Secretary's decision on grounds they perceive to be more persuasive than those that she invoked.  The court, however, is not free to substitute its own judgment for that of the Secretary's, however appealing it might find the substance of petitioners' case.

---

[10]The amici brief filed in this case implies that the Secretary's failure to discuss these decisions is evidence that her opinion is arbitrary and capricious.  I do not, however, read <u>Bachowski</u> as requiring the Secretary to canvass all relevant case law in giving her reasons.  <u>Doyle v. Brock</u>, 821 F.2d 778, 783 (D.C. Cir. 1987), a case urged on petitioners' behalf at oral argument, is not to the contrary.  The issue in <u>Doyle</u> was the Secretary's persistence  in declining to sue for reasons that had been uniformly rejected by case law (including that of the Supreme Court).  Here, for the distinctions stated, there is no inconsistency between the Secretary's determination and the holdings of the two cases that she is faulted for failing to consider.

## ORDER

For the foregoing reasons, the defendants' motion to dismiss is <u>ALLOWED</u>.

SO ORDERED.

UNITED STATES DISTRICT JUDGE