UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-CV-11028-RGS

THOMAS HARRINGTON

v.

ELAINE L. CHAO

MEMORANDUM AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

October 8, 2003

STEARNS, D.J.

BACKGROUND

Before the court are cross-motions for summary judgment seeking to affirm or overturn a decision of the Secretary of Labor exempting the New England Regional Council of Carpenters (NERC)[1] of the United Brotherhood of Carpenters and Joiners of America (UBC) from the obligation to comply with the procedures governing "local" union elections mandated by the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481(b). This issue is not a new one for the court, the case having been remanded by the First Circuit for reconsideration of an earlier decision upholding the Secretary. See Harrington v. Herman, 138 F. Supp. 2d 232 (D. Mass. 2001).[2] As suggested, the first round went badly for the plaintiff and the district court. On May 25, 2000, Thomas Harrington (then a business agent and now the

---

[1]This is the style used by the First Circuit in Harrington v. Chao, 280 F.3d 50 (1st Cir. 2002), although the fuller acronym NERCC is used in the briefs.

[2]Secretary Chao has been substituted for Alexis Herman, her predecessor in the previous administration.

chief executive officer of the NERC), together with other UBC members, filed this Complaint seeking to compel the Secretary of Labor to require the NERC to elect its officers by direct secret ballot, rather than indirectly through delegates representing union locals. The Secretary refused, reasoning that the NERC was an "intermediate body," and therefore exempt from the requirements of section 481(b) of the LMRDA.[3]  On April 10, 2001, this court allowed the Secretary's motion to dismiss, holding that it was "not free to substitute its own judgment for that of the Secretary's, however appealing it might find the substance of petitioners' case." Harrington, 138 F. Supp. 2d at 236.  The Court of Appeals disagreed, holding that the Secretary's Statement of Reasons for refusing to initiate a civil enforcement proceeding was "insufficient to permit meaningful judicial review." Harrington, 280 F.3d at 52.  The district court was ordered to remand the case to the Secretary for further explanation.  Id. at 60.  On January 31, 2003, Secretary Chao issued a Supplemental Statement of Reasons reaffirming her predecessor's determination that the NERC was an LMRDA intermediate body.  The parties then filed cross-motions for summary judgment.  On July 17, 2003, the court heard oral argument.

THE COURT OF APPEALS DECISION

---

[3]Officers of intermediate bodies:

> such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot.

LMRDA, § 481(d).  How the UBC came to restructure the NERC into its present configuration is explained in Harrington v. Chao, 280 F.3d at 53-54.

The standard of review was set out by the First Circuit in Harrington, 280 F.3d at 56.

The Secretary's decision under Title IV of the LMRDA not to bring an action against a labor organization for violation of 29 U.S.C. § 481 is subject to only narrow judicial review.  In Dunlop v. Bachowski, 421 U.S. 560 (1975), the Supreme Court held that the Secretary's decision is subject to review under the Administrative Procedure Act for whether her decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at 565 (quoting 5 U.S.C. § 706(2)(A) and citing 5 U.S.C. §§ 702, 704).  The Supreme Court said that "[e]xcept in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious.

Before attempting to bring this highly deferential standard of review to bear, a review of the First Circuit's criticism of the Secretary's original Statement of Reasons is required. Harrington argued in this court and before the Court of Appeals that the Secretary's refusal to initiate an enforcement proceeding represented a departure from the Department of Labor's position in prior cases, and that the Secretary had given no meaningful explanation for reversing course.  The Court of Appeals agreed with Harrington, noting that the Secretary's Statement of Reasons raised two distinct issues.

The first is whether the Secretary has departed from her prior interpretation of the Act, codified at 29 C.F.R. § 452.11 (2001).  The second is whether the Secretary, if she is employing the analysis contained in 29 C.F.R. § 452.11, is doing so in a manner consistent with Donovan v. National Transient Division, International Brotherhood of Boilermakers ("Boilermakers"), 736 F.2d 618 (10th Cir.1984), and Schultz v. Employees' Federation of the Humble Oil & Refining Co. ("Humble Oil"), No. 69-C-54, 1970 U.S. Dist. LEXIS 12288 (S.D. Tex. Mar. 31, 1970). As to the first question, the regulation provides that

[t]he "characterization of a particular organizational unit as a 'local,' 'intermediate,' etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself.

29 C.F.R. § 452.11.

3

Id. at 56-57.    According to the Court of Appeals, the Secretary's Statement of Reasons appeared oblivious to the "functions and purposes" test of section 452.11 as evidenced by her statement that:

> "[t]here is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body."

Id. at 57.    As the Court of Appeals noted, the Secretary's statement is inconsistent with the explicit language of section 452.11 which "requires a 'functions and purposes' analysis."    Id. Moreover, to the extent that the Secretary's Statement of Reasons appeared to advert to a "functions and purposes" test, she did so "without any reference to [her] own precedents, including the precedents discussed in Boilermakers and Humble Oil," id., both of which relied on a functional analysis to uphold the Secretary's determination that the intermediate bodies at issue performed the functions and duties of a local union and were therefore required to hold direct elections.

> Given the similarities between this case and Boilermakers and Humble Oil, the Secretary must provide some explanation distinguishing these cases. We cannot now say whether the Secretary has changed her interpretation or departed from the regulation, but we can say with fair assurance that substantial questions have been raised and the Secretary's statement is inadequate to permit us to resolve them.    In that sense – the inadequacy of her statement – the statement is arbitrary.

Id. at 58.    The Court of Appeals identified the specific shortcomings in the Secretary's Statement of Reasons as follows.

> Based on the Secretary's Statement of Reasons, we are unable to determine if the Secretary has changed the policy articulated in 29 C.F.R. § 452.11 or her interpretation of that policy.  We are confronted here with a different problem than

4

was faced in Bachowski, created by what appears to be an inconsistency between the Secretary's approach and her regulation and prior decisions, which may represent a volte-face by the Secretary.  Her Statement of Reasons fails to explain whether she is departing from her prior course and, if so, the reasons for the change. . . .

Should she again decide not to initiate suit, the Secretary must file a sufficient Statement of Reasons, which addresses both the application of the functions and purposes test of 29 C.F.R. § 452.11, and whether her decision is consistent with her precedents.  If there has been a change, she should also explain whether changing labor market economics justify a modification of prior interpretation or a building construction trades exception to it, or what the other reasons for the change are.  See Yueh-Shaio Yang, 519 U.S. at 31-32 (agency may carve out exceptions to general policy).

Id. at 59-60, 61.  The Secretary, in other words, was given two choices (or possibly three): (1) to demonstrate that her decision was compatible with the Boilermakers and Humble Oil precedents; or (2) to explain why a change in the interpretation of section 452.11 was supportable; or (possibly) (3) to give reasons why building construction trades unions should be deemed excepted from the regulation and the decisions in Boilermakers and Humble Oil.  See id. at 61 ("[S]he should also explain whether changing labor market economics justify a modification of prior interpretation or a building construction trades exception to it. . . .").[4]

---

[4]Judge Torruella, in a concurring opinion, viewed the Secretary's options somewhat differently.

> My colleagues in the majority conclude that they are presently unable to determine whether the Secretary's actions in this case were unlawful, and that only further clarification from the Secretary will permit proper review. Given this holding, as I understand it, the Secretary now has three options following remand: 1) she may initiate suit; 2) she may decline to initiate suit, acknowledge that she is adopting a new enforcement policy and interpretation of the Act, and provide her reasons for altering her prior policy; or 3) she may decline to initiate suit and attempt to clarify for the court why she believes her decision is consistent with the governing regulations and established past practice.

SUBSEQUENT PROCEEDINGS

On January 31, 2003, the Secretary submitted a Supplemental Statement of Reasons, essentially arguing that there had been no change in policy and that her decision with respect to NERC was consistent with prior precedent.[5]  She began her re-analysis by acknowledging the enduring vitality of the section 452.11 functions and purposes test.

> [T]he critical inquiry in determining whether an entity designated by the union as an intermediate body should instead be considered a local body is whether the intermediate body has taken on so many of the traditional functions of a local union that it must in actuality itself be considered a local union.  Although the Department has never before found an organization at the middle of a union's structure to be a "local" labor organization, at some point the entity at the middle of a union's structure could take over so many of the functions and purposes of the local labor organizations that such an entity should itself also be treated as a local labor organization for purposes of the LMRDA.

Supplemental Statement, at 3.[6]  The Secretary then, however, made clear that she had not altogether abandoned what Judge Torruella's concurring opinion characterized as a "structural approach," arguing that an

---

> I fully agree that the Secretary is entitled to pursue either of the first two options.  I write separately to express my view that it would be futile for the Secretary to exercise the third option.  We need no additional information to correctly conclude that the Secretary's decision in this case does not square with her established policies and practices.  Since the Secretary has provided no reasoned basis for the inconsistency, we should set aside her decision as "arbitrary and capricious" in violation of 5 U.S.C. § 706(2)(A).

Id. at 61.

[5]The Secretary, in other words, chose the option that Judge Torruella thought to be a "futile" exercise.

[6]The second sentence of this extract is puzzling as Humble Oil involved an enforcement proceeding brought by the Secretary against an intermediate body that "had numerous subordinate local bodies" (albeit with "no separate autonomy" for collective bargaining purposes).  Harrington, 280 F.3d at 58.

organization's placement within the structure of a union is also highly relevant in determining whether it is a "local" or "intermediate" union.  The very term Congress used to denominate these entities – "intermediate bodies" – identifies them according to their position in the union hierarchy.  29 U.S.C. § 481(d). . . . Elsewhere, the statute identifies a "joint council" as "subordinate to a national or international labor organization," 29 U.S.C. § 402(i), once again using placement in the overall union hierarchy to identify an intermediate body.  Therefore, although the Secretary will not defer to a union's own characterization of an entity as an intermediate body or a local labor organization, it is proper for the Secretary to take account of an entity's placement in the union's structure in making the determination whether it is an intermediate body or a local labor organization.

Supplemental Statement, at 5.  The Secretary contended that the Boilermakers and Humble Oil cases can be distinguished "because in neither case did there exist local organizations with the significant functions and purposes of the local organizations in the UBC organizational structure."  Id. at 6.  Citing various tasks performed by NERC locals, such as collecting monthly dues, holding periodic meetings, ratifying previously negotiated collective bargaining agreements, and involvement in the handling of grievances,[7] the Secretary concluded that

it is . . . plain that the local unions that are subordinate to the [NERC] continue to perform functions and purposes traditionally associated with local unions.  In these circumstances, neither the Department's regulations, nor any applicable precedent, compel a conclusion that the Secretary should require the [NERC] to conduct elections in accordance with the LMRDA's election rules for local unions.

Supplemental Statement, at 10.

DISCUSSION

At oral argument, Harrington readily agreed that the Secretary's Supplemental Statement of Reasons accurately describes the functions and purposes test of section 452.11 in a manner

---

[7]Harrington disputes the accuracy of the Secretary's description of some of these local functions. See Harrington Memorandum, at 3-5. I agree with both parties that the Secretary's characterization of the precise powers of the NERC's local unions is not material to this decision.

consistent with prior precedent. But that is as far as it goes.  Harrington characterizes the

Secretary's position (accurately I believe) as follows.  Because the NERC locals continue to

perform some functions, they "satisfy the definition of 'local' in the ordinary sense and are clearly

subordinate to [the NERC], which in turn is subordinate to the International Union," and that

therefore the Secretary was "'unable to conclude that the locals of [the NERC] are so depleted

of power and function that they no longer constitute 'local' labor organizations under the

LMRDA.'" Harrington Memorandum, at 9 (quoting Supplemental Statement, at 2).  As

Harrington points out, this "structural" argument, that "if the [NERC] locals had any function and

purpose as a local labor organization then, per force, [the NERC], as an intermediate body,

could not be a local labor organization" is precisely the rationale that the Court of Appeals found

wanting.  Id.

The logic of Harrington's argument is inescapable.  It seems clear that the Secretary's

purpose is to expand the functions and purposes test of section 452.11 by giving it a structural

dimension.[8]   By refusing, however, to admit that her interpretation of the test represents a

---

[8]A candid description of the Secretary's reformulation of the test is set out in her brief as
follows.

> [A] functional analysis is incomplete without reference to the functions remaining
> in the locals.  Review  of the subordinate bodies is essential in determining
> whether the intermediate body exercises an impermissible amount of the local's
> functions. Significant responsibilities in the subordinate entity necessarily mean
> that the intermediate body – the entity in question – exercises incrementally
> fewer functions. . . . Conversely, a local union that exercises meaningful,
> traditional functions and purposes establishes that the intermediate body has
> not taken over the local's historic role.

Secretary's Memorandum, at 17.  While there is nothing implausible about this "functions plus
structure" test, it does represent a  departure  from past precedent as the Secretary's

departure from precedent, she makes the same error as her predecessor by shifting the focus

of the inquiry from the "intermediate" body, the NERC, where it belongs, to the subordinate

locals, where it does not.  The issue under the traditional test, as defined by the Court of

Appeals, is not whether the NERC's locals perform some of the tasks associated with a labor

union, but rather (in the Secretary's own words) whether the NERC as an intermediate body,

"has taken on so many of the traditional functions of a local union that it must in actuality itself

be considered a local union."  Supplemental Statement, at 3.  See Harrington, 280 F.3d at 57

(the relevant inquiry is an examination of the functions "of the entity in question.").  In explaining

her "functions plus structure" approach, the Secretary states that

> [t]o the extent that these [specified] functions are performed by an intermediate
> organization, it is necessary to determine whether the subordinate organizations
> continue to play a meaningful role.  If the subordinate organizations in fact
> continue to perform functions and to exist for purposes traditionally associated
> with local labor unions, the union's characterization of an entity placed structurally
> between such organizations and the international union as an "intermediate
> body'' will be upheld even though the intermediate body also performs some
> other functions traditionally associated with local unions.

Supplemental Statement, at 4.  As Harrington points out, this reasoning answers the wrong

question. "What the Secretary should have asked is whether the functions and purposes of [the

NERC] are sufficient to characterize it as a 'local' organization."  Harrington Memorandum, at

---

inconsistent explanation of the functions and purposes test in her Supplemental Statement of
Reasons demonstrates.  See Supplemental Statement, at 3, quoted at 6, supra.  The
Secretary concedes that the regulation "calls for a functional analysis," but argues that it does
not contain "a negative pregnant implication" limiting her solely to the consideration of an
organizational unit's functions and purposes.  Secretary's Memorandum, at 18 & n.3. This may
be true, but it is not consistent with the prior interpretation of section 452.11.

13 (emphasis added).[9]  The issue is not that the Secretary is powerless to change the test.  See Harrington, 280 F.3d at 59 ("Agencies do have leeway to change their interpretation of laws, as well as their own regulations, provided that they explain the reasons for such change and provided that those reasons meet the applicable standard of review."). The error lies in the fact that she has done so without explanation as the Administrative Procedure Act requires.  See id. at 58 ("A deviation from prior interpretations without sufficient explanation may be considered arbitrary and capricious and therefore subject to judicial reversal.").

ORDER

For the foregoing reasons, Harrington's motion for summary judgment is ALLOWED. The Secretary's cross-motion for summary judgment is DENIED.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

---

[9] In attempting to reconcile her new test with the Boilermakers and Humble Oil precedents, the Secretary scours these opinions for uses of the word "structure" (which readily appear). It is clear in context, however, that the Boilermakers and Humble Oil courts were referring to the structure of the challenged entity itself and not the union as a whole as the Secretary's reformulated test would require. See, e.g., Boilermakers, 736 F.2d at 623 ("[W]e agree with the Secretary that we must focus on NTD's [the intermediate body] functions and structure in order to determine whether it is a local or a national labor organization.") (emphasis added).